IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTONIO VICENTE FRANCISCO, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | No. 25-03377-CV-S-BP |
| | ) | |
| JIM C. ARNOTT, Greene County, Missouri Sheriff, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and wishes to seek a bond hearing, but DHS has made clear that he will not be granted one. Pending is his Petition for Writ of Habeas Corpus in which he argues federal statutes and the Due Process Clause require that he be granted a bond hearing. The Court agrees with Petitioner's statutory arguments, and on that basis (and without addressing the constitutional issues),[1] it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

### I. BACKGROUND

Petitioner is a citizen of Mexico who "has been in the United States since approximately May 2006;" he lives here with his partner and his minor son, who is a United States citizen. (Doc. 1, ¶¶ 1, 23, 52-53.) In November 2025 he "was detained during a workplace raid" and has been held in custody ever since; currently, he is being held in the Green County Jail. (Doc. 1, ¶¶ 1-2, 55-56.) Because his son is under the age of twenty-one, Petitioner is eligible to apply for cancellation of removal. (Doc. 1, ¶¶ 23, 59.)

---

[1] The Court also finds it unnecessary to consider Petitioner's arguments regarding the Administrative Procedures Act.

Petitioner would like to be considered for release on bond. However, any request for such consideration is futile because DHS and the Executive Office for Immigration Review ("EOIR") take the position that Petitioner's detention is mandatory and bond is categorically not permitted. Moreover, in September 2025, the Board of Immigration Appeals (the "BIA") changed its long-standing prior position on the matter and held that a person in Petitioner's circumstances is not entitled to consideration for release on bond. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

Petitioner brought this proceeding, which seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, against (1) the Green County Sheriff, (2) the Secretary of DHS, and (3) United States Attorney General, and (4) the Acting Assistant Filed Office Director of Immigration and Custom Enforcement, all in their official capacities. He has also named EOIR and DHS as Respondents. He asserts the Immigration and Nationality Act (the "INA") and the Due Process Clause both entitle him to the opportunity to seek release on bond, and he challenges the EOIR's change in position under the Administrative Procedures Act. Respondents argue that Petitioner is not entitled to be considered for release, and the Court resolves the parties' arguments below.

## II. DISCUSSION

### A. Jurisdiction

Respondents argue that three statutory provisions—8 U.S.C. §§ 1252(e)(3), (g), and (b)(9)—deprive this Court of jurisdiction to consider Petitioner's claims. The Court disagrees.

Section 1252(e)(3)(A) specifies that "[j]udicial review of determinations under section 1225(b) . . . and its implementation is available in an action instituted in the United States District Court for the District of Columbia." However, because of § 1252(e)(3)'s title—"Challenges on Validity of the System"—it has been construed as relating to challenges to statutes and regulations,

not individualized decisions. *E.g.*, *Mairena-Munguia v. Arnott*, 2025 WL 3229132, at *2 (W.D. Mo. Nov. 19, 2025) (citing *Munoz Materano v. Arteta*, 2025 WL 2630826, at *10 (S.D.N.Y. Sept. 12, 2025); *see also Garland v. Aleman Gonzalez*, 596 U.S. 543, 559 (2022) (Describing § 1252(e)(3) as "channeling review of the 'implementation' of specified provisions into the U. S. District Court for the District of Columbia."); *Grace v. Barr*, 965 F.3d 883, 893 (D.C. Cir. 2020) (Discussing the difference between the review provisions in § 1252(a)(2) and § 1252(e)(3)). This understanding is also consistent with the deadline for bringing such claims, which must be filed "no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . is first implemented." 8 U.S.C. § 1252(e)(3)(B). "Further, this statute only [applies to] those held under 8 U.S.C. § 1225. However, the Court finds that Petitioner is being held under 8 U.S.C. § 1226. Therefore, 8 U.S.C. § 1252(e)(3) does not deprive the Court of [j]urisdiction." *Mairena-Munguia*, 2025 WL 3229132, at *2.

Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." Such judicial review is to commence in the Court of Appeals. 8 U.S.C. § 1252(b)(2). However, § 1252(b)(9) "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Department of Homeland Sec. v. Regents of the Univ. of CA*, 591 U.S. 1, 19 (2020) (cleaned up; quotations omitted); *see also Jennings v. Rodriguez*, 583 U.S. 281, 293-94 (2018). Petitioner is not bringing one of these challenges, so § 1252(b)(9) does not deprive the Court of jurisdiction.[2]

---

[2] Numerous suits like this one have been brought around the country, and in virtually all of them the district court has found jurisdiction exists. The Court is not aware of any that have been appealed, and there are no appellate decisions

Lastly, § 1252(g) provides that no court has jurisdiction under any statutory provision (including 28 U.S.C. § 2241) "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . ." Like § 1252(b)(9), this provision is "narrow," as the review preclusion is specifically limited to review of decisions to commence or adjudicate cases or execute removal orders. *Department of Homeland Sec. v. Regents of the Univ. of CA*, 591 U.S. 1, 19 (2020). Petitioner is not challenging any of these decisions or actions, so § 1252(g) does not deprive the Court of jurisdiction.[3]

### B. Exhaustion

Respondents next argue Petitioner's request for relief should be denied because he has not exhausted his administrative remedies. 8 U.S.C. § 1252(d)(1) provides that exhaustion is required before a final order of removal can be challenged in court. But Petitioner (1) is not challenging a final order of removal and (2) seeks relief under 28 U.S.C. § 2241, which does not have an exhaustion requirement. These observations have caused courts to conclude § 1252(d)(1) does not require exhaustion when the issue is whether an alien is entitled to a bond hearing. *E.g.*, *Miranda v. Garland*, 34 F.4th 338, 351 (4th Cir. 2022); *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004); *see also Eliseo A.A. v. Olson*, 2025 WL 2886729, at *6 (D. Minn. Oct. 8, 2025). Moreover, virtually every District Court to consider the issue in the context at issue here has

---

to consider. In the interest of brevity, the Court cites, as representative examples of cases supporting this analysis, a few of those decisions from District Courts in this Circuit: *Sales Abrocio v. Noem*, 2025 WL 3295530, at *2-3 (D. Neb. Nov. 25, 2025); *Eshdavlatov v. Arnott*, 2025 WL 3217838, at *2 (W.D. Mo. Nov. 18, 2025); *Barrajas v. Noem*, 2025 WL 2717650, at *3 (S.D. Iowa Sep. 23, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427, at *4 (N.D. Iowa Sep. 23, 2025); *Jose J.O.E. v. Bondi*, 2025 WL 2466670, at *6-7 (D. Minn. Aug. 27, 2025).

[3] The cases cited in footnote 2 also serve as representative examples of cases from within this Circuit reaching the same conclusion.

4

concluded the BIA's recent decision in *Matter of Yajure Hurtado* renders any attempt to exhaust futile and, hence, excuses it.[4]

### C. The INA

With respect to the merits, Petitioner's statutory argument involves the interplay of two statutes: 8 U.S.C. § 1225 and § 1226. The question is: which one applies to Petitioner? In answering this question, the Court must begin with the statutes' plain language. *E.g.*, *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalue, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011). "[T]he title of a statute and the heading of a section are [also] tools available for the resolution of a doubt about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) (cleaned up). Finally, "when deciding whether the language is plain, [the Court] must read the words in their context and with a view to their place in the overall statutory scheme" because the objective is "to construe statutes, not isolated provisions." *King v. Burwell*, 576 U.S. 473, 486 (2015) (cleaned up).

Petitioner argues that his situation is governed by § 1226, which is entitled "Apprehension and detention of aliens" and provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Except for aliens described in § 1226(c) (which consists of those who committed various crimes and does not apply to Petitioner's circumstances), the Attorney General may detain the alien or release him or her on bond. *Id*. § 1226(a)(1), (2). And significantly for present purposes, there can be little doubt that Petitioner is an alien who has been arrested pending a decision regarding whether he is to be removed, as described in § 1226(a).

---

[4] Representative cases from courts in this Circuit include: *Mairena-Munguia v. Arnott*, 2025 WL 3229132, at *2 (W.D. Mo. Nov. 19, 2025); *E.M. v. Noem*, 2025 WL 3157839, at *2 n.1 (D. Minn. Nov. 12, 2025) (citing *Alvarez Ortiz v. Freden*, 2025 WL 3085032, at *5 (W.D.N.Y. Nov. 4, 2025)); *Eliseo A.A. v. Olson*, 2025 WL 2886729, at *6 (D. Minn. Oct. 8, 2025).

But Respondents argue that § 1225(b)(2) applies to Petitioner. Respondents' reasoning starts with § 1225(a)(1), which provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission." Thus, according to Respondents, by operation of law Petitioner was deemed an "applicant for admission." And "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to . . . the United States" are to be "inspected by immigration officers." *Id*. § 1225(a)(3).

The inspection called for by § 1225(a) is discussed further in § 1225(b). Section 1225(b)(1) applies to aliens who are inadmissible for specific reasons, such as "fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1225(b)(1)(A)(i)). Section 1225(b)(2) is, in one sense, broader in that it applies to aliens who are not addressed in § 1225(b)(1). It is also seems to be narrower, in that it directs that "if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted" he or she shall be detained. 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

As explained above, Respondents argue that Plaintiff is deemed an "applicant for admission" pursuant to § 1225(a)(1); they then contend he must therefore also be deemed to have been "seeking admission" within the meaning of § 1225(b)(2)(A). However, this is not what the statute's text provides. Congress specified that the mandatory detention provision of § 1225(b)(2)(A) applies to those "seeking admission" and did not use the phrase "applicant for admission" that it defined previously in § 1225(a)(1). In other words, Congress could have drafted § 1225(b)(2)(A) to provide that "if the examining immigration officer determines that an *applicant for admission* is not clearly and beyond a doubt entitled to be admitted he or she shall be detained"—but it did not. And here, while Petitioner may be an applicant for admission, he was

6

Case 6:25-cv-03377-BP    Document 7    Filed 12/29/25    Page 6 of 10

never *seeking admission*, so § 1225(b)(2)(A) and its provision for mandatory detention do not apply.

> Had Congress intended for [§ 1225(b)(2)(A)] to apply to all applicants for admission, it could have said so by simply replacing the phrase "an alien seeking admission" with the term "an applicant for admission;" or to be even more succinct, it could have replaced the phrase "an alien seeking admission" with the word "alien." Under either of these constructions, it would be clear that "applicant for admission" means the same thing as "alien seeking admission," which is Respondents' interpretation of the statute. But this is not the language that Congress chose.

*J.A.M. v. Streeval*, 2025 WL 3050094, at *2 (M.D. Ga. Nov. 1, 2025). Respondent's interpretation would "completely ignore, or even read out, the term 'seeking' from 'seeking admission.' The term 'seeking' implies action. Noncitizens who are present in the country for years, like [Petitioner] . . . are not actively 'seeking admission.'" *Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (quotations omitted).[5] Thus, Respondents' interpretation is not supported by the text, whereas Petitioner's is.

Respondents contend Petitioner's interpretation "rewards aliens who unlawfully enter the United States without inspection and subsequently evade apprehension for number of years." (Doc. 5, p. 15; *see also* Doc. 9, p. 23.)[6] But as explained above, if this was Congress's concern, it would have simply declared that all "applicants for admission" must be detained. Instead, §

---

[5] Other District Courts making this same point include (but certainly are not limited to): *Sales Abrocio v. Noem*, 2025 WL 3295530, at *3-5 (D. Neb. Nov. 25, 2025); *Mairena-Munguia v. Arnott*, 2025 WL 3229132, at *3-4 (W.D. Mo. Nov. 19, 2025); *Picazo v. Sheehan*, 2025 WL 3006188, at *3 n.2 (N.D. Iowa Oct. 27, 2025); *Belsai D.S. v. Bondi*, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025); *Hernandez Marcelo v. Trump*, 2025 WL 2741230, at *7 (S.D. Iowa Sep. 10, 2025); *see also*, *e.g.*, *Hernandez v. Baltazar*, 2025 WL 2996643, at *5 (D. Colo. Oct. 24, 2025); *Patel v. Corwley*, 2025 WL 2996787, at *7-8 (N.D. Ill. Oct. 24, 2025); *Lomeu v. Soto*, 2025 WL 2981296, at *8 (D.N.J. Oct. 23, 2025); *Hyppolite v. Noem*, 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025); *Echevarria v. Bondi*, 2025 WL 2821282, at *6 (D. Ariz. Oct. 3, 2025); *Lepe v. Andrews*, 2025 WL 2716910, at *5 (E.D. Cal. Sep. 23, 2025). In addition, the Seventh Circuit endorsed these conclusions in the context of its review of a preliminary injunction. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *8-9 (7th Cir. Dec. 11, 2025).

[6] All page numbers for documents filed with the Court are those generated by the CM/ECF system.

1225(b)(2) provides that a subset of applicants—those actually "seeking admission"—are to be detained. It is not the Court's prerogative to rewrite statutes in order to effectuate Congress's perceived objectives.[7]

Moreover, Respondents' interpretation is inconsistent with recent amendments to § 1226. In 2025, Congress passed the Laken Riley Act, which added § 1226(c)(1)(E) and requires detention of aliens who are inadmissible pursuant to § 1182(a)(6)(A), (D), or (E). But under the Respondent's interpretation of these provisions, such aliens are already subject to mandatory detention under § 1225(b)(2)—which means the 2025 amendments to § 1226 have no purpose. "[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). Moreover, "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995). Given a choice between Respondent's interpretation (which would render the 2025 amendment superfluous) and Petitioner's interpretation (which would give the amendment purpose), Petitioner's interpretation is preferred.[8]

---

[7] For that matter, it is entirely possible Congress intended the statutes to be interpreted as they have been here. Congress may have recognized some aliens would inevitably enter the country and, like Petitioner, establish productive lives. Here, Petitioner has been in the country for almost 20 years, was caring for his minor child, and (as demonstrated by the fact that he was arrested during a workplace raid) was employed. Congress could choose, as a matter of policy, to (1) afford such individuals the opportunity to seek bond because their ties to the community might demonstrate they are not flight risks while (2) depriving that opportunity to those who arrive at the border and would likely lack the ability to assure they will appear for hearings and other proceedings. Ultimately, it is not the Court's role to either divine Congress's purpose or determine the appropriate policy.

[8] Other District Courts making this point include, but are not limited to: *Sales Abrocio v. Noem*, 2025 WL 3295530, at *6 (D. Neb. Nov. 25, 2025); *Avila v. Bondi*, 2025 WL 2976539, *6 (D. Minn. Oct. 21, 2025); *Helbrum v. Olson*, 2025 WL 2840273, at * 4 (S.D. Iowa Sep. 30, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427, at *5 (N.D. Iowa Sep. 23, 2025); *see also Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *9 (7th Cir. Dec. 11, 2025); *Patel v. Crowley*, 2025 WL 2996787, at *8 (N.D. Ill. Oct. 24, 2025); *Gutierrez v. Baltasar*, 2025 WL 2962908, at *7 (D. Colo. Oct. 17, 2025); *Covarrubias v. Vergara*, 2025 WL 2950097, at *4 (S.D. Tex. Oct. 8, 2025); *Lepe v. Andrews*, 2025 WL 2716910, at *6-7 (E.D. Cal. Sep. 23, 2025); *Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025); *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025); *dos Santos v. Noem*, 2025 WL 2370988, at *7 (D. Mass. Aug. 14, 2025).

8

Finally, Respondents point to the BIA's decision in *Matter of Yajure Hurtado*, 29 &N Dec. 216 (BIA 2025), which relies heavily on the conclusion (rejected herein) that an "applicant for admission" under § 1225(a) is automatically "seeking admission" under § 1225(b)(2). However, the BIA's decision is not entitled to deference for a variety of reasons, including (1) the issue involves interpretation of statutes, not the exercise of agency discretion, and (2) the decision is contrary to the agency's long-standing practice and interpretation of the statutes.[9] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-88 (2024).[10]

### C. The Due Process Clause

Petitioner's Due Process arguments rely on the same statutes he relies on for his statutory argument, (*see* Doc. 1, ¶¶ 57-60), and his legal argument does not independently address the Due Process Clause. (*See generally* Doc. 10.) Therefore, the Court's conclusion that § 1226 grants Petitioner the right to a bond hearing is sufficient and there is no need to independently discuss the Due Process Clause.

### III. CONCLUSION

The Court concludes Petitioner is not subject to mandatory detention pursuant to 8 U.S.C. § 1225, and that he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226. Accordingly, the

---

[9] Some District Courts have also examined the Government's historical practices under §§ 1225 and 1226 as evidence of those statutes' meanings. This inquiry would only further support the Court's conclusion, so the Court will not delve into it; however, as one of those courts stated, "over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework for determining bond for noncitizens who are already in the country and facing removal." *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *5 (E.D. Mich. Aug. 29, 2025); *see also*, *e.g.*, *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *9 & n.13 (7th Cir. Dec. 11, 2025); *Vazquez v. Feeley*, 2025 WL 2676082, at *15-16 (D. Nev. Sept. 17, 2025); *Rosado v. Figueroa*, 2025 WL 2337099, at *9 (D. Ariz. Aug. 11, 2025); *Martinez v. Hyde*, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025)

[10] Other District Courts to similarly reject *Hurtado* in light of the Supreme Court's decision in *Loper Bright* include: *Lopez v. Jeffreys*, 2025 WL 3533875, at *5 (D. Neb. Dec. 5, 2025); *Avila v. Bondi*, 2025 WL 2976539, at *5 n.7 (D. Minn. Oct. 21, 2025); *Belsai D.S. v. Bondi*, 2025 WL 2802947, at *7 n.5 (D. Minn. Oct. 1, 2025); *see also Ramos v. Rkosky*, 2025 WL 3063588, at *8 (D.N.J. Nov. 3, 2025); *Velasquez v. Noem*, 2025 WL 3003684, at *6 (D. Md. Oct. 27, 2025); *Hernandez v. Crawford*, 2025 WL 2940702, at *2 n.4 (E.D. Va. Oct. 16, 2025); *Barrera v. Tindall*, 2025 WL 2690565, at *5 (W.D. Ky Sept. 19, 2025); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *6 (E.D. Mich. Sept. 9, 2025).

Petition for Writ of Habeas Corpus is **GRANTED**. Respondents are **ORDERED** to either release Petitioner or grant him a bond hearing within ten (10) days of this Order.

**IT IS SO ORDERED.**

|  |  |
|---|---|
|  | /s/ Beth Phillips |
|  | BETH PHILLIPS, CHIEF JUDGE |
| **DATE**: December 29, 2025 | UNITED STATES DISTRICT COURT |